Good morning, your honors. Carl Gunn from the Federal Public Protector's Office in L.A. I'm representing Mr. Ewing. As I understand the government's brief, it agrees that the officer needed probable cause here to think the money that was in the weatherstripping of the window was evidence of a crime. I think that follows from two things. First, looking at the money, unfolding it and looking at it was a search under Hicks. Second, the Houghton case that the government cites and the prior automobile cases like Ross... Well, the money was in plain view, wasn't it? Well, not the serial numbers on the money and not the number of bills in the folded money. And when you pulled the money out of the weatherstripping and opened it up and looked at it to see how many bills there are, what kind of bills there were, and comparing the serial numbers, that was a search. It was probably more of a search than in Hicks where all that was done was moving a turntable a few inches to look at a serial number. So the question devolves to whether there was evidence from which there was a reasonable suspicion of a drug crime. Probable cause, your honor. Excuse me. You're right. Yes. And that's the basis of the district court's ruling. And actually, one other point, your honor, not a drug crime, but I think a drug trafficking crime as opposed to a drug use or under the influence crime, which I think is a very important distinction here and I can get to that. Because... Why do you think that matters? Because the only reason to think that the money would be evidence of a crime would be if it was a drug trafficking crime or more specifically a drug courier. The only evidence the office, the only training or information the officer relied on to think the money was evidence of a crime. Well, what if the guy were on his way to buy? He doesn't have to be the seller. Well, there was no testimony or declaration. I guess I don't want to get into a whole argument about whether he has to be the buyer or the seller or whatever. But what were the facts known to the officer at the time that pertained to a drug crime? And I'm going to be generic about drug crime in this question. Right. So I'm going to want to go and explain why there's a difference. I think there's basically four factors I understood the government to be pointing to. So I think one of them melts into one of the others. The first was that there was this nervousness. So I think that really melts into the conclusion that he was under the influence of drugs. So it's really part of that fact. Although nervousness has two aspects. One is under the influence and the other is, uh-oh, I'm being caught at doing something. Correct. And there's lots of cases that we've talked about in the briefs about nervousness. And most of them say nervousness, I would say, doesn't get very much weight. The second was that the front seat passenger was on parole, but no information about what he was on parole about. The third that was when the officer asked about the money. He asked the passenger specifically. The passenger says, I don't know. And the government makes something out of the fact that no one else in the car said anything, which I don't think means hardly anything at all. The real factor that I think is key here, Your Honor, that the government relies on, and it then has the theory that this money is drug proceeds, not money intended to buy drugs, but drug proceeds, is a combination of two factors. The officers believe from the way the front seat passenger was acting that he was under the influence of drugs, and the officers' training that drug couriers hide money in door side panels and secret compartments. Now, there are two problems. Concealment. Well, specifically that they hide them inside door panels and secret compartments, not halfway down the weather stripping of a window in a car. There's two problems with that, Your Honor. First of all, that was about drug couriers who were transporting drug proceeds which are seizable. A drug user who has money that he may intend to buy drugs with, there's nothing illegal about that money and nothing to suggest it might be seized. Plus, if the drug user is already under the influence of drugs, then he's presumably already spent his money. It seemed to me there was one other fact, and maybe I'm misremembering the timing of this, but I thought that before any search occurred, the officer was told that Mr. Ewing had produced counterfeit bills. That was after the officer looked at the bills and saw that they were counterfeit. That was after he compared the serial numbers and saw the serial numbers were identical, so it was after the search occurred. Okay. I think that's very clear from the record. But what was the, you know, it's unusual to have. I never was involved in a case where you had money sticking out the center of a window. That's true, Your Honor. There's no question I think I conceived this was, to use a colloquialism, weird. But I cite the Sixth Circuit case, Your Honor, in my brief, and it makes a very important point. It's at the end of my reply brief. And that is that the police are not authorized to seize odd items. They aren't authorized to seize something and search it just because they think it's something strange, or if I can use my colloquialism, weird. And there was, I admit that it's hard to understand why someone sticks money halfway down the weatherstripping of a window. But I think it's hard to understand why a criminal does that, too. It's just strange. I mean, one thing I suggest is we did have someone here who was under the influence of drugs. At least that's what the officer believed. And people who are under the influence of drugs sometimes do strange things. The strange things aren't necessarily criminal. And money possessed by someone who's simply under the influence of drugs, as opposed to a drug seller or a drug courier, is not illegal and is not evidence of a crime. So that, I do think, Your Honor, it's very important here to realize that what the officer suspected or arguably had reason to suspect was a drug user, not the drug couriers he'd been trained about, and not even drug sellers, which he didn't testify about any training about. So I really, maybe there was probable cause to search the car here and anything in the car that might contain such things for drugs or drug paraphernalia, but not money. And what difference, if any, does it make to our analysis that no one claimed ownership of the cash before it was seized? The government has not appealed the holding that your client had standing to claim Fourth Amendment protection. But does that play at all into the officer's suspicions or conclusions concerning the legitimacy of the money? I don't think so, Your Honor. I think that, I mean, one thing I was going to say to the court, you know, they talk about combining all the factors. I think what you have here are a bunch of zeroes or almost zeroes that still add up to zero, almost zero. I think that's an almost zero or a zero. And here's why. First of all, the government muddies the record up a little bit. But if you look carefully at the record, he didn't ask everybody in the car whose money is this. He asked the passenger, I think, why was the money here. And the passenger said, I don't know. This is in the declaration. I think it says Excerpt 18. His declaration says the fact that nobody claimed ownership of the cash raised further suspicion that there was potential criminal activity occurring. That may have been what he was saying in his declaration. But, of course, the test isn't his subjective evaluation of that, but what a reasonable person would think. Here I don't think it meant anything, Your Honor, because, first of all, as I indicated, he asked the front seat passenger, not everybody in the car generally. The front seat passenger did answer, albeit by saying, I don't know. And then no one else said anything. I don't think you can attach a lot of weight to no one saying anything when they weren't asked about it. I think it's very common, very understandable, that someone who's in this intimidating situation of being stopped by an officer who's asking about stuff might just not say anything, especially if they're not asked. So I don't think that really adds very much to the government's calculus of probable cause, Your Honor. I think I've addressed what I have to say about the drug courier, et cetera, and the training. I ask that you have a minute and a half left. I say that for rebuttal unless there's a question the Court wants me to answer right now. All right. Thank you. Good morning. Satya Gaga on behalf of the United States. May it please the Court. As defendant himself concedes, defendant has no standing to challenge the search of the car in this case. And the fact that he has no standing is entirely dispositive. But, counsel, you didn't appeal on that issue, did you? The defendant conceded it in his papers. So the government didn't spend any time exhausting that issue. The district court ruled against you on that, correct? The district court said several things that are actually inconsistent with each other, Your Honor. The district court first said at the end one of its findings was that a search, as the defendant uses the term, did not occur of the money. A search did not occur. The district court also said that the defendant had no expectation of privacy in the money, but did say that he had standing. Now, standing in a Fourth Amendment context. Well, let's just get back to basics. Although you say the district court was inconsistent on this point, there is a part of its decision where the court said the defendant has standing to raise this issue. Correct, Your Honor. That is correct. And I did not see in your brief a specific assignment of error to that to say we shouldn't even be having this discussion because the district court was erroneous in holding that he had standing. Was I missing something in your brief? You're not missing something, Your Honor. That is absolutely correct. Well, then why should we reach that issue? It seems to me that it's been waived. I'm only speaking for myself, just reacting to what you're saying. So I don't know if that's where we'll end up. But why isn't that a waiver, your failure to brief that issue straight up and say, you know, and another reason why we should win is the district court was wrong in even allowing this discussion to go forward. That's correct, Your Honor. It was not explicit in the government's brief. What the government did do is highlight that the defendant waived the issue of standing as to the vehicle and then spent the bulk of its brief describing why it was just a vehicle search and not two searches as a defendant would have this waiver. Okay. Well, it would be helpful to me at least, and my colleagues may have a different view of this, but I'd appreciate knowing, based on the argument that we just had, why this was permissible, assuming that there was standing to raise the question. And you say it's a parolee search of Mr. Smith and so on and so forth. But that would be more helpful to me. Certainly, Your Honor. The scope of a search is defined by the object of the search in any place that the object could be concealed in a car. And the factors that went into the factors that the officer relied on are several. And it was the nervousness. It was also that the passenger was under the influence of an amphetamine specifically. It was that the passenger was also on parole. And finally, there was this money concealed or attempted to be concealed in the door of the car. And I'd also like to point the Court to the record that all three of the passengers said that the money or didn't acknowledge ownership of the car. And if you look at the excerpts of records at page 46, the deputy says at the motion to suppress hearing that he asked all three passengers whether the money belonged to them, and no one acknowledged ownership. Was the money concealed? It was not. It was not concealed. It was. You just said it was concealed. Pardon me. The money was partially concealed, was attempted to be concealed, Your Honor, in the windows, in the door compartment of the vehicle. Well, how far was it sticking out? It was sticking out such that the officer could see that it was money, and it was folded over $20 bills, and the officer could see from his vantage point that it appeared to be about 15 separate bills folded over. And while pulling it out, asked if anybody, if the money belonged to anybody, no one acknowledged ownership. And that also contributed to the probable cause determination. How far from the edge of the door did it extend? Well, there was nothing in the record, Your Honor, that describes how many inches or centimeters the money was actually sticking out. But the officer did testify that it was sticking out enough that he believed that there was an effort to conceal it, and he could tell that it was $20 bills folded in half, and about 15 of them. What the defendant is asking this court to find is that probable cause, that the officer must have known that that money was evidence of a particular crime before seizing it or looking at it in this case. And that's simply not what the probable cause analysis requires in a vehicle search. It's simply that a reasonable man, based on facts available to the officer at the time, believed that the item may be contraband, or useful evidence. And the money in this case certainly was at the very least maybe contraband or useful evidence in terms of investigating the drug offense he was investigating. Arizona v. Hicks, the case cited by defendant, and it's centrally relied on by defendant, and defendant's characterization that the deputy searched the money by looking at it is simply wrong. Officers are entitled to look at the evidence that they find. None of defendant's authority confers standing in a passenger in a vehicle and the vehicle case search law is settled. The court can properly affirm the district court's denial of defendant's motion to suppress. Thank you. Thank you. Just quickly, let me make three quick points on the standing abandonment question, because I think that's the third point. Maybe the first one is it has not been raised by the government either explicitly or implicitly in its brief. The first point is you need standing in the money, not the car, to challenge the search of the money. I think that's clear from Hicks, because it's clear from Hicks that that is itself a search. The second point, Judge Graber, I think you were maybe thinking of some abandonment because Mr. Ewing didn't say anything. I think the abandonment case law makes rather clear that you need some affirmative denial of ownership as opposed to just not saying anything. And here, of course, the question, the declaration of the officer indicates the declaration was directed to the front seat passenger. His testimony at the hearing is a little ambiguous about that, but his declaration specifically says he asked Mr. Smith about the why, not whose money it was, but why there was money coming out of the door. And Mr. Smith said he did not know. None of the other passengers said anything in response to my question. So I think that is consistent with my characterization of what was asked. I don't know that I have anything more to say unless the Court, Your Honors, have questions for me to respond to. I think we're all set. Thank you, Your Honor. All right. The matter is submitted. And we'll go to the next matter, which is Alpha Delta Chi v. Reed. All right. All right.
judges: Pregerson, Ripple, Graber